## Commonwealth *vs.* Charles P. Dixon.

Middlesex. March 5, 1985. — June 11, 1985.

Present: Hennessey, C.J., Wilkins, Abrams, Nolan, & Lynch, JJ.

*Evidence,* Relating to deliberation by jurors. *Jury and Jurors. Practice, Criminal,* Deliberation of jury, Interrogation of jurors.

Where, based on an affidavit of an attorney in a criminal case, which averred in general terms that certain undisclosed communications between a witness and a third party were made known to at least one juror, the judge would have been warranted in exercising his discretion to conduct a postverdict inquiry into the possibility that extraneous influences had an effect upon the jury, this court remanded the case to the trial judge for him either to conduct an interview of the juror, or, in the alternative, in the limited circumstances of the case, to give defense counsel an opportunity to interview the juror for the purpose of expanding upon his affidavit. [151-153]

Indictments found and returned in the Superior Court Department on August 30, 1982.

The cases were tried before *John Paul Sullivan,* J., and motions for a new trial and for a postverdict inquiry of the jurors were heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Nona E. Walker,* Committee for Public Counsel Services, for the defendant.

*James D. Barretto,* Assistant District Attorney (*Margot Botsford,* Assistant District Attorney, with him) for the Commonwealth.

Nolan, J. After a jury trial, the defendant was convicted of two counts of mayhem, two counts of kidnapping, one count of aggravated rape, and two counts of assault and battery with a dangerous weapon. He subsequently filed motions for a new trial and for a postverdict inquiry of the jurors. A judge of the

Superior Court denied these motions, and the defendant appealed. The Appeals Court affirmed the judgments, 18 Mass. App. Ct. 1107 (1984), reasoning that the trial judge did not err in refusing to conduct a postverdict inquiry of the jurors because the defendant had failed to sustain his burden of showing the need for an inquiry.[1] We granted further appellate review. The sole issue before us is whether the judge erred in denying the motion for a postverdict inquiry of the jurors.

We summarize only those facts relevant to the issue presented to us. The jury returned its verdicts on February 14, 1983. On March 3, 1983, the defendant filed a motion for a postverdict inquiry of the jury. This motion was accompanied by an affidavit executed by the defendant's trial attorney. The affiant averred that on the afternoon of February 16, 1983, he returned a telephone call from a man who identified himself as a member of the jury that had convicted the defendant and gave counsel his name.[2] According to the attorney, "[t]his person stated that a female juror's husband had conversations with some of the witnesses in this case during the course of the trial and these conversations were made known to said female juror."[3]

The trial judge held a hearing on the motion for a postverdict inquiry of the jurors. At this hearing, the defendant argued that an inquiry was necessary, primarily relying upon that portion of the affidavit quoted above. No additional evidence was presented in support of the motion. In denying the defendant's motion, the judge opined that the information contained in the affidavit was insufficient to establish the need for a post-

---

[1] The Appeals Court's memorandum is unpublished. The defendant does not challenge his convictions or the denial of his motion for a new trial.

[2] The attorney averred that he neither sought nor solicited, directly or indirectly, this telephone conversation or any information regarding the jurors, or their deliberations, from this juror or any juror.

[3] The affidavit also contains additional statements, attributed to this juror, pertaining to the conduct of the jury in reaching its verdict. The defendant did not rely upon these portions of the affidavit in his argument before either the judge or the Appeals Court. We note, however, that these statements concerned the internal decision-making process of the jury. Juror testimony would not, therefore, be permitted on these matters. See *Commonwealth* v. *Fidler,* 377 Mass. 192, 197-198 (1979).

verdict inquiry. The judge indicated that the statements in the affidavit did not amount to a "significant" or "considerable" showing that extraneous matters infected the jury deliberations. The defendant's attorney stated that he did not ask the juror to relate specific details with respect to the juror's concerns about the deliberation process, but instead noted the general areas of the juror's concerns and relayed this information to the court. The defendant's attorney argued that the contents of his affidavit were sufficient to require further inquiry whether an extraneous matter had come to the attention of the jury.

Initially, we consider whether the allegation at issue concerned a matter on which juror testimony would be admissible to impeach the jury's verdict. In *Commonwealth* v. *Fidler*, 377 Mass. 192, 200 (1979), we stated that juror testimony may be introduced to prove that "specific facts not mentioned at trial concerning one of the parties or the matter in litigation were brought to the attention of the deliberating jury." The attorney in the present case averred that certain communications between a witness and a third party were made known to at least one juror. The judge in this case would have been warranted in allowing juror testimony to determine "the *existence* of extraneous influences which, judged by their probable effect on a hypothetical jury, may have prejudiced a party" (emphasis in original). *Cassamasse* v. *J.G. Lamotte & Son*, 391 Mass. 315, 318 (1984).

The issue before us becomes whether, based on the information in the affidavit before him, the judge should have exercised his discretion to conduct some type of investigation into the possibility that extraneous influences had an effect upon the jury. "When confronted with allegations of irregularity in the jury's proceedings, the trial judge has broad discretion 'to determine what manner of hearing, *if any*, is warranted'" (emphasis added). *United States* v. *Campbell*, 684 F.2d 141, 151 (D.C. Cir. 1982), quoting *United States* v. *Wilson*, 534 F.2d 375, 379 (D.C. Cir. 1976). No duty to investigate arises unless the court finds some suggestion or showing that extraneous matters were brought into the jury's deliberations. *Commonwealth* v. *Fidler, supra* at 203. The party seeking judicial

investigation must make a colorable showing that an extrinsic influence may have had an impact upon the jury's impartiality. *United States* v. *Winkle,* 587 F.2d 705, 714 (5th Cir.), cert. denied, 444 U.S. 827 (1979). "In other words, there must be something more than mere speculation." *United States* v. *Barshov,* 733 F.2d 842, 851 (11th Cir. 1984), cert. denied, 469 U.S. 1158 (1985). The question whether the party seeking an inquiry has made such a showing is properly addressed to the discretion of the trial judge.

A trial judge's refusal to conduct some type of investigation into allegations of extrinsic influences upon a jury may constitute reversible error. In *Remmer* v. *United States,* 347 U.S. 227, 229 (1954), the United States Supreme Court opined that: "In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." However, in the present case, unlike *Remmer,* there is no indication that the communications alleged to have occurred concerned "the matter pending before the jury." See *United States* v. *Mitchell,* 410 F. Supp. 1201, 1203 (D.C. 1976), cert. denied, 431 U.S. 933 (1977) (evidentiary hearing into allegations of extraneous influence upon jurors not required under *Remmer* where defendant failed to allege that substance of alleged conversations concerned a matter pending before jury). Compare *United States* v. *McKinney,* 429 F.2d 1019, 1021,1026 (5th Cir.), aff'd, 434 F.2d 831 (1970), cert. denied, 401 U.S. 922 (1971) (trial judge erred in failing to conduct evidentiary hearing to investigate allegation contained in defense counsel's motion for new trial that jurors had learned of defendant's escape from custody from newspaper and had discussed this escape during deliberations).

The defendant contends that under *Commonwealth* v. *Fidler,* 377 Mass. 192 (1979), defense counsel was barred from inquiring into the nature or subject matter of the conversations at issue. In *Fidler, supra* at 202, we refused to sanction "unrestricted posttrial interviews" of jurors. However, we stated that "[i]f counsel or litigants without solicitation obtain information suggesting that 'extraneous matters' were brought into the jury deliberations, counsel may investigate to determine whether there is matter requiring the attention of the judge." *Id.* at 203. The defendant's attorney necessarily, therefore, had "the right to conduct enough of an unsupervised investigation" to obtain sufficient information to bring the allegations of jury misconduct to the attention of the judge. *Cassamasse* v. *J.G. Lamotte & Son,* 391 Mass. 315, 318-319 (1984).

We are not unmindful of the sensitive position of defense counsel in this case and we intend no criticism of his conduct. He was somewhere between Scylla and Charybdis. We simply stress his right to make a preliminary inquiry to determine whether the substance of the information warranted the judge's inquiry. Where a case is close, as here, a judge should exercise discretion in favor of conducting a judicial inquiry.

On the facts of the present case, defense counsel was free to question the juror during the telephone call to obtain as much detail as possible about the subject matter of the alleged extraneous influence, but not about the deliberations themselves. However, we remain of the opinion that unrestricted posttrial interviews "would defeat the important interests protected by restrictions on the use of juror testimony to impeach verdicts." *Fidler, supra,* at 202.

We remand the case to the trial judge. The judge may conduct the interview of the juror, or, in the alternative, in these limited circumstances, he may give defense counsel the opportunity to interview the juror for the purpose of fleshing out the affidavit. The judge may require that the interview take place under such terms and conditions as he deems reasonable for the convenience of the juror. Defense counsel may then make a new affidavit. If sufficient facts emerge, the judge should then conduct whatever further proceedings may be required.

*So ordered.*