COMMONWEALTH *vs.* TIMOTHY D. GUISTI. June 11, 2007. *Jury and Jurors. Practice, Criminal,* Jury and jurors, Voir dire.

We consider in this appeal whether, after conducting a series of hearings to determine whether the jury had been exposed to external influences during the defendant's trial, the trial judge erred in denying the defendant a new trial or, alternatively, further inquiry into the matter. We have reviewed the trial judge's substantial findings and rulings and agree with her decision.

When the defendant's direct appeal from his convictions was before us, we concluded that the trial judge erred in denying the defendant's postverdict motion for a voir dire of a juror. *Commonwealth* v. *Guisti,* 434 Mass. 245, 246 (2001). We summarized the relevant facts and applicable law in that opinion and do not repeat them here. At issue, both then and now, was whether electronic mail messages (e-mails) received by the juror during trial in response to an e-mail she had sent to others about the trial exposed any of the deliberating jurors to extraneous matters. We remanded the case to the trial judge with the following instructions:

> "We remand the case for the judge to conduct a voir dire limited to determining the following: whether the juror was in fact the woman who posted [on an Internet mail service] two e-mail messages [concerning the case while it was ongoing]; if so, whether she received any responses; and whether the juror communicated the substance of any such responses to other jury members prior to or during deliberations."

*Id.* at 253. The judge thereafter conducted a voir dire of the juror, and concluded that "there is nothing in the evidence before the Court to indicate that [the juror] was ever at any time exposed to any extraneous matters" and that "there is no basis for any further action in this matter."

The defendant appealed, alleging, among other things, that the trial judge had unduly restricted the scope of the hearing. Concerned that the judge might have interpreted our initial remand order more narrowly than we intended, we again remanded the matter (this time in an unpublished order) for further proceedings, and we retained jurisdiction of the defendant's second appeal pending the completion of those proceedings. We ordered:

> "The judge shall determine the appropriateness of appointing an expert to examine the juror's computer, to determine whether any e-mails the juror may have received in response to those she sent can be located and retrieved, even if the juror believed that she had 'deleted'

them. The judge shall also consider, for example, whether the contents of any responsive e-mails can be determined through the records of the [I]nternet mail service provider or administrator of the so-called 'listserv.' In sum, the judge is free to consider evidence, to the extent necessary and appropriate, from sources other than her questioning of the juror, in an attempt to determine fully the facts in each of the four areas [we had] identified [in our first opinion]."

In response to our second remand order, an investigation, culminating in hearings over nine days between November, 2004, and June, 2005, ensued. The judge issued extensive findings and rulings. As her findings summarize, the evidence was that two individuals, both of whom happened to be attorneys in other States, responded to the juror's e-mail. Both generally cautioned the juror not to communicate about ongoing proceedings, and one of them further advised her to notify the judge about the message she had sent. The text of one attorney's written communication was available; the text of the other was not. The attorney whose e-mail communication had not survived was identified and interviewed by the parties' investigators in the presence of counsel. Her testimony about the content of the e-mail was consistent with the juror's testimony: in essence, as the trial judge summarized, it "reminded the juror of the seriousness of her responsibility."[1]

The trial judge credited the juror's testimony about the communications she received, and concluded that there was no evidence that anyone other than two attorneys had responded to the juror's e-mails, and that the juror had not been exposed to extraneous influences because of those responses. See, e.g., *Commonwealth* v. *Guisti, supra* at 253, citing *Commonwealth* v. *Fidler,* 377 Mass. 192, 201 (1979) (defendant's burden to establish juror exposed to extraneous matters). There was no error in concluding that the jury had not been exposed to "information not part of the evidence at trial."[2] *Commonwealth* v. *Guisti, supra* at 251. Accordingly, the judge was not obligated to go further. *Commonwealth* v. *Dixon,* 395 Mass. 149, 151 (1985) ("[n]o duty to investigate arises unless the court finds some suggestion or showing that extraneous matters were brought into the jury's deliberations").[3]

In sum, the trial judge's conclusion that the jury were not exposed to

---

[1] In response to questioning, the attorney indicated that, while she did not have a copy of her e-mail response, she would not have "shared any opinions . . . about the crime of rape," "[u]nless possibly that it was serious and she ought to be taking her job seriously for everybody's sake involved," and would "[a]bsolutely not" have told the juror to stay on the case "to ensure conviction." The attorney agreed to the defendant's request for a forensic evaluation of her computer; a State police trooper qualified in forensic computer examination found no evidence of the e-mail at issue on the computer. The Commonwealth may return the attorney's computer to her after the issuance of this court's rescript.

[2] The judge found that the juror who sent the e-mails did not share with the other jurors any of the responses she had received. See *Commonwealth* v. *Guisti,* 434 Mass. 245, 251-252 (2001) (juror comments and opinions not extraneous matters).

[3] In response to the defendant's motion that the juror's computer be preserved pending completion of appellate proceedings, the juror's counsel represented to the judge that "the [juror's] computer will be preserved in its present condition or at least not in any way destroyed until such time as there might be any further [appellate] decision in this case." He also indicated that the computer had been given to the juror's brother.

extraneous influences was amply supported by the evidence and her findings. Neither a new trial nor further proceedings are warranted. The defendant's other claims regarding his convictions having been addressed in our prior decision, *Commonwealth* v. *Guisti, supra,* we affirm the judgments of the Superior Court.

*Judgments affirmed.*

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*Tracey A. Cusick,* Assistant District Attorney, for the Commonwealth.

---

When the computer was sought for additional investigation after our second order of remand, the juror's brother testified that, by that time, he had disposed of it. After hearing, the judge credited the brother's testimony that the computer had been discarded without knowledge that there was any further need to preserve it. In any event, the judge found, there was no indication that the juror had sent or received any communications other than those previously identified. Having heard testimony from all involved, the judge "reject[ed] as without foundation any suggestion that [the juror], or anyone else, has at any time attempted to deceive the Court as to the whereabouts or condition of the computer." Affording, as we do here, "special deference to the factual findings" of the motion judge, who was also the trial judge, *Commonwealth* v. *Pillai,* 445 Mass. 175, 185 (2005), and reasoning that she was warranted in concluding that "nothing in the record indicates that a search of the computer would have yielded anything of assistance to the defendant," there was no error in denying relief to the defendant based on the disposal of the juror's computer. See *Commonwealth* v. *Neal,* 392 Mass. 1, 12 (1984), quoting *State* v. *Michener,* 25 Or. App. 523, 532 (1976) (defendant must establish "a 'reasonable possibility, based on concrete evidence rather than a fertile imagination,' that access to the [material] would have produced evidence favorable to his cause").